UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                        Case No. 19-cr-113-pp

DIMITRY VISHNEVETSKY,

    Defendant.

---

**ORDER DENYING DEFENDANT'S SECOND MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 9)**

---

      As the court recounted in its March 2020 order, on August 27, 2012, before Judge Ruben Castillo in the Northern District of Illinois, the defendant pled guilty to one count of wire fraud and one count of bank fraud, in relation to a complex, sophisticated and long-running (some six years) Ponzi scheme. <u>United States v. Dimitry Vishnevetsky</u>, Case No. 12-cr-315 (N.D. Ill.), Dkt. Nos. 18, 19. The defendant faced a sentencing guideline range of seventy-eight to ninety-seven months, and anywhere from one to five years of supervised release. Dkt. No. 7-3 at 1. Judge Castillo sentenced the defendant to a total term of seventy-two months—six months below the low end of the guideline range—and two years of supervised release. Dkt. No. 7-2. In imposing this below-guidelines sentence, Judge Castillo took into account the defendant's "overall potential for full rehabilitation." Dkt. No. 7-3 at 3.

      The defendant began serving his term of supervision on January 17, 2019—thirteen months and three weeks ago. Dkt. No. 7 at 1. On February 11, 2020—not quite thirteen months into his two-year supervised release term—

1

the defendant filed a motion for early termination of supervision. Dkt. No. 3. He listed many factors in support of his request: his participation in the Residential Drug Abuse Program while in custody (id. at 1); his work teaching GED classes to and tutoring fellow inmates, as well as teaching life skills classes (id. at 1-2); his authorship of two children's books that focus on "the importance of pursing an education, maintaining a moral compass, and learning how to overcome obstacles in a positive and appropriate way" (id.); his two jobs working with programs that provide in-home services to disabled persons (id.); his volunteer work at his synagogue and at the local JCC (id.); his full compliance with the terms of supervision (id.); his regular restitution payments (id.); his desire to show his parents that he has changed (id. at 2-3); his desire to "avail himself to better pursue his books, animations, and ideas, in larger advertising and consumer markets," (id. at 3); the possibility that he might be asked to travel to other cities on short notice in connection with his writing work (id.); and the possibility that he could pay more toward the $1,684,763.60 restitution obligation, and pay it more quickly, were he not limited by the geographical restrictions of supervision (id. at 4). The defendant attached to the motion a letter he wrote to the court, personally explaining these accomplishments, as well as letters from his mother and father. Dkt. No. 3-1.

      The government objected to the motion, noting that the defendant had, at the time the motion was filed, served only one year of his two-year supervision term, that the two-year term of supervision was relatively short and that the defendant had not shown that being on supervision impeded him in any way. Dkt. No. 6.

2

Case 2:19-cr-00113-PP   Filed 09/14/20   Page 2 of 6   Document 10

The court denied the motion, finding that the nature and circumstances of the offense weighed against early termination. Dkt. No. 8. The court observed that the defendant ran a six-year sophisticated fraud scheme that racked up over $1.6 million dollars in restitution. Id. at 3. Noting that the only mention the defendant made of the havoc he wreaked by his offenses was a statement that his time in prison gave him the opportunity to think about the "mistakes" he'd made, the court opined that neither the motion nor the defendant's letter give the court any indication of the defendant's understanding of the severity of the crimes he committed. Id. The court concluded that it appeared the defendant had used his prison time wisely, participating in substance abuse counseling through the RDAP program and helping other inmates obtain their education degrees and learn life skills, and that it appeared that in his time on supervision, the defendant had worked hard and had volunteered with his synagogue. Id. at 4. The court acknowledged that the defendant had a college education and was working, though it was unable to find any evidence of the children's books he indicated he'd published. Id. at 4-5. The court hazarded that the defendant might be under-employed given his educational background and noted that he had rehabilitation needs, given his history of alcoholism. Id. at 5.

The court focused particular attention on the need to avoid unwarranted sentencing disparities. Id. at 5. It agreed with the government that the two-year supervision term Judge Castillo imposed was not particularly onerous and could be considered short. Id. The court concluded that early termination would result in a disparity with the kinds of supervisory terms imposed on other defendants. Id. While commending the defendant on working, paying restitution and complying with the terms of his supervision, the court observed

3

that this is what is expected of defendants on supervision. Id. at 6. Finally, the court pointed out that the defendant had not identified any new or unforeseen circumstances, and that when he'd asked leave to travel, his probation officer had granted it. Id.

About four and a half months later, the defendant filed this second motion for early termination of supervised release. Dkt. No. 9. The second motion indicates that it has been hard for the defendant to continue his work in home health care in the era of the coronavirus pandemic. Id. at 2. He indicates that even though this field of works puts him, and his older parents, at greater risk for infection, he has continued the work, going through rigorous sanitizing between patients and before he goes home. Id. He also has continued to volunteer at his synagogue and at the JCC. Id. He explains that he has quit drinking and does not use drugs, as evidenced by his negative urine drops. Id. at 3.

The plaintiff's counsel—with whom the court is familiar from its days as an assistant United States Attorney in the Northern District of Illinois—personally addresses the concerns the court expressed in its March order about whether the defendant had acknowledged the seriousness of his offenses. Counsel reminds the court that he has been a criminal defense attorney (and, in the court's experience, an outstanding one) for forty-five years, and that in that time, he has gained the experience to know the remorseful from the entitled. Id. Counsel asserts that the defendant "is filled with equal parts, regret, remorse, and the hope for a brighter, even if unsung future." Id.

Section 3583(e)(1) of Title 18 allows a court to terminate a term of supervised release after one year if that action is warranted, and if it is in the

interest of justice. The court must consider certain of the 18 U.S.C. §3553(a) factors when deciding whether to grant early termination—the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1)); deterrence (18 U.S.C. §3553(a)(2)(B)); protection of the public (18 U.S.C. §3553(a)(2)(C)); the need to provide the defendant with education or vocational training or medical care in the most effective manner (18 U.S.C. §3553(a)(2)(D)); the applicable Guideline policy statements (18 U.S.C. §§3553(a)(4) and (5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. §3553(a)(6)); and the need to provide restitution (18 U.S.C. §3553(a)(7)). There is a presumption of early termination if a defendant has been under supervision at least eighteen months, is not a particular type of offender, presents no identified risk to the public or victims and has no moderate or high-grade supervision violations.

The court addressed the §3553(a) factors in its March decision. Those factors haven't changed in the six months since. The world has changed—the coronavirus has upended American society and, as the defendant notes, made the jobs of health care workers more dangerous. And time has passed—the defendant now has served just shy of nineteen of the twenty-four months of his supervised release term. The court acknowledges that this means he now is subject to the presumption of early termination. The court commends the defendant for continuing his job despite fears for himself and his parents related to COVID-19, for continuing his work with the temple and the JCC and for addressing his drinking.

What has not changed is the fact that the defendant did not receive a particularly long term of supervised release to begin with. The second motion, like the first, fails to explain how low-level supervision prevents the defendant

5

Case 2:19-cr-00113-PP    Filed 09/14/20    Page 5 of 6    Document 10

from advancing in his career or otherwise improving his life. The second motion does not address the fact that while the first motion asserted that the defendant might need to travel to promote children's books he had written, the court was not able find the book, or any book by the defendant, on Amazon (though the defendant and his mother represented that it was available there).

The court appreciates and respects counsel's experience and his view that the defendant is remorseful, and credits counsel with doing his level best to present the best aspects of his client's character. But the court continues to be struck by the fact that while the defendant's lawyer says that the defendant is remorseful, and his mother says that he has had time to reflect on how "this has impacted [the defendant's] life and the lives of others," dkt. no. 3-1 at 5, and his father says that he is remorseful "for what he has done" and has "accepted his mistakes and made every effort to atone for them," dkt. no. 3-1 at 6, the *defendant* has not mentioned his victims or the injuries his actions caused. Perhaps the defendant has told his lawyer and his parents that he knows that he harmed the people he victimized, that he knows he cannot make them whole, that he regrets the pain and the harm he caused. But it is striking, and telling, that the defendant has not articulated this himself.

The court **ORDERS** that the defendant's second motion for early termination of supervised release is **DENIED**. Dkt. No. 9.

Dated in Milwaukee, Wisconsin this 14th day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
